**PLATTNER VERDERAME PC**
P.O. Box 36570
Phoenix, AZ 85067-6570
Telephone: 602-266-2002
E-mail: pvpc@plattner-verderame.com
Frank Verderame
State Bar No. 007519

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| MARTIN FISHGOLD and VALERIE FISHGOLD, husband and wife<br><br>Plaintiffs,<br><br>v.<br><br>C.R. BARD, INC., a foreign corporation; DAVOL, INC., a subsidiary of C.R. BARD, INC.,<br><br>Defendants. | **NO.**<br><br>**COMPLAINT**<br><br>(Negligence / Products Liability) |

For their complaint against defendants, plaintiffs allege as follows:

**ALLEGATIONS COMMON TO ALL COUNTS**

1. Plaintiffs are residents of Maricopa County, State of Arizona. The acts complained of herein occurred in Maricopa County, Arizona.

2. Defendant C.R. Bard, Inc. ("Bard") is a foreign corporation licensed to conduct business in the State of Arizona, County of Maricopa.

3. Defendant Davol, Inc. ("Davol") is a foreign corporation and a subsidiary of defendant Bard.

4. Defendant DAVOL manufactures the Composix® Kugel Mesh Patches ("Kugel Patch"). DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

5. Defendant, BARD is a corporation that is incorporated under the laws

of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant hereto had a registered agent in Arizona at CT Corporation System, 2394 E. Camelback Rd., Phoenix, AZ 85016.

6. Defendant DAVOL designed, manufactured and distributed the Composix Kugel Patch, a hernia mesh patch that was inserted into plaintiff Martin Fishgold's body.

7. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into plaintiff Martin Fishgold's body.

8. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Composix Kugel Patch was authorized by the FDA as a Class II medical device.

9. Immediately after the Kugel Patches were placed on the market, DAVOL and BARD began receiving actual notices of memory ring failures and Kugel Patch defects. DAVOL and BARD actively and intentionally concealed this notice of the defective and dangerous condition associated with the Kugel Patches from plaintiff, plaintiff's physicians, and the general public.

10. After the defective and dangerous Kugel Patch was already placed on the market, Defendants DAVOL and BARD conducted physician screenings and reviews as early as 2002. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, BARD and DAVOL

failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or “dissatisfied” results. These complaints and concerns of the physician surveyors were actively concealed by DAVOL and BARD from plaintiff, plaintiff’s surgeons, and the public at large.

11. On December 19, 2002, plaintiff had a “ventral incisional hernia repair with mesh” performed at Paradise Valley Hospital in Phoenix, Arizona. Plaintiff had a Bard Composix Kugel Hernia Patch implanted during this procedure.

12. On June 26, 2006, plaintiff Martin Fishgold underwent the following emergency procedures: (1) laparascopic lysis of adhesions; (2) removal of mesh from wall of midjejenum; (3) removal of the expandable plastic ring from the mesh; and (4) attachment of the inferior mesh to the anterior abdominal wall to prevent exposure of bowel to Marlex.

13. The Composix Kugel Patch hernia repair product implanted in plaintiff was designed, manufactured, sold and distributed by DAVOL and BARD to be used by surgeons for hernia repair surgeries and was further represented by DAVOL and BARD to be an appropriate, cost-effective and suitable product for such purpose.

14. No later than September 2004, Defendants uncovered serious problems with the weld process involving the memory recoil ring. Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control. DAVOL and BARD were aware these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous

defect. This information was intentionally withheld at this time from plaintiff, plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

15. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marketed increase in the number of complaints with the Kugel Patch and the memory recoil ring. In spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Kugel Patch distribution hold. DAVOL and BARD actively and intentionally chose not to immediately inform plaintiff, plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring. DAVOL and BARD waited until December 2005 to notify the public of the potential severity of the complications which were resulting from the dangerous and defective Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

16. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

17. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice.

18. The Composix Kugel Patch was recalled due to a faulty "memory recoil

ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

19. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

i. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;
ii. misidentified numerous Kugel Patch complication events;
iii. failed to apply the product quality hold and release procedure on a timely basis;
iv. failed to properly follow the procedures for conducting design validation review;
v. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall;
vi. failed to provide full information which they knew regarding numerous Kugel Patch complaints;
vii. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce;
viii. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

20. On March 24, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

21. On January 10, 2007, the existing recall on the Composix Kugel Patch

was again expanded to encompass further production lots of the defective hernia mesh product.

22. Plaintiffs were never informed by Defendants of the defective, dangerous, and recalled nature of the Kugel Patch and memory recoil ring which had been implanted until well after discovering of Bard's and Davol's FDA recall of the product.

23. On or about June 24, 2006, plaintiff Martin Fishgold began to develop severe abdominal pain with nausea and vomiting which became progressively worse, and on June 30, 2006, he underwent the procedures described above to remove the Kugel mesh which had caused an infection.

24. Davol and Bard withdrew a large number of Composix Kugel Patches as a result of the high complication and failure rate of the product, including the patch implanted in plaintiff.

25. Upon information and belief, Davol and Bard failed to comply with the FDA application and reporting requirements.

26. Upon information and belief, Davol and Bard were aware of the high degree of complication and failure rate associated with their Composix Kugel Patches before they were recalled.

27. Upon information and belief, Davol and Bard were aware of the defect in manufacture and design prior to the recall of their Kugel Patches.

**COUNT I**

**(Negligence)**

28. Plaintiff repeats and realleges each and every allegation contained in paragraphs I through 27 of this Complaint as if fully set forth herein.

29. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect , package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Composix Kugel Patch.

30. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Composix Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Composix Kugel Patch's users.

31. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Composix Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

32. DAVOL and BARD were aware of the probable consequences of the Composix Kugel Patch. DAVOL and BARD knew or should have known the Composix Kugel Patch would cause serious injury; they failed to disclose the known

or knowable risks associated with the Composix Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of plaintiff.

33. Defendants DAVOL and BARD owed a duty to plaintiff to adequately warn her and hers treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Composix Kugel Patch and the resulting harm and risk it would cause patients.

34. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

35. As a direct and proximate result of the duties breached, the Composix Kugel Patch used in plaintiff Martin Fishgold's hernia repair surgery failed, resulting in plaintiff suffering pain and harm.

36. As a direct and proximate result of the negligence of defendants, plaintiff Martin Fishgold sustained severe and permanent injuries and suffered great pain, anxiety and emotional anguish, as well as a decrease in the quality of his life.

37. As a further direct and proximate result of the negligence of defendants, plaintiffs have been required and will in the future be required, to pay extensive medical expenses.

38. As a further direct and proximate result of the negligence of

defendants, plaintiff Martin Fishgold has suffered disfigurement.

39. As a further direct and proximate result of the negligence of defendants, plaintiffs have sustained a loss of income and loss of earning capacity.

40. As a further direct and proximate result of the negligence of defendants, plaintiffs have suffered substantial economic hardship.

41. As a further direct and proximate result of the negligence of Defendants, plaintiff Valerie Fishgold has suffered disruption and experienced loss **of** services, companionship and consortium of her spouse, plaintiff Martin Fishgold.

42. Plaintiffs have been damaged in an amount which exceeds the minimum jurisdictional requirements of this Court.

43. Defendants' conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of punitive damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

## COUNT II

## (Strict Product Liability)

44. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. DAVOL and BARD designed, manufactured, assembled, distributed,

conveyed and/or sold the Kugel Patch for hernia repair surgery.

46. The Composix Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. Plaintiff's Composix Kugel Patch was a Class I recalled device that failed while in his body causing him to develop serious physical complications which required subsequent surgery for the removal of the Composix Kugel Patch.

47. At all times mentioned, the Composix Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

48. The Composix Kugel Patch implanted into plaintiff was being used in a manner reasonably anticipated at the time it was implanted in her by her surgeon.

49. The Composix Kugel Patches, like the one found in plaintiff, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to plaintiff as follows:

i. The Composix Kugel Patch was sold in a defective condition by design and manufacture;
ii. The Composix Kugel Patch as designed and manufactured was unsafe to plaintiff;
iii. The Composix Kugel Patch as designed and manufactured was unreasonably dangerous to plaintiff;
iv. The Composix Kugel Patch did not perform safely as an ordinary consumer/patient, like plaintiff, would expect;
v. The Composix Kugel Patch as designed and manufactured was unsafe for its intended use;
vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Composix Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Composix Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Composix Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Kugel Patches for hernia repair surgery as will be learned during discovery.

50. As a direct and proximate result of the actions of defendants, plaintiff Martin Fishgold sustained severe and permanent injuries and suffered great pain, anxiety and emotional anguish, as well as a decrease in the quality of her life.

51. As a further direct and proximate result of the actions of defendants, plaintiffs have been required and will in the future be required, to pay extensive medical expenses.

52. As a further direct and proximate result of the actions of defendants, plaintiff Martin Fishgold has suffered disfigurement.

53. As a further direct and proximate result of the actions of defendants, plaintiff Martin Fishgold has sustained a loss of income and loss of earning capacity.

54. As a further direct and proximate result of the actions of defendants, plaintiffs have suffered substantial economic hardship.

55. As a further direct and proximate result of the negligence of Defendants, plaintiff Valerie Fishgold has suffered disruption and experienced loss **of** services, companionship and consortium of her spouse, plaintiff Martin Fishgold.

56. Plaintiffs have been damaged in an amount which exceeds the minimum jurisdictional requirements of this court.

57. Defendants' conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of punitive damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**COUNT III**

**(Intentional Infliction of Emotional Distress)**

58. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Defendants DAVOL and BARD are liable to plaintiffs for the intentional infliction of emotional distress.

60. Plaintiffs suffered severe emotional distress, as a result of defendants' extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Composix Kugel Patch for

hernia repair surgery.

61. Plaintiffs suffered severe emotional distress, which was as a result of defendants' extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to plaintiff Martin Fishgold.

62. As a direct and proximate result of the intentional and wanton acts set forth above, plaintiffs have suffered and continue to suffer severe emotional distress.

63. As a further direct and proximate result of the intentional, willful and wanton acts set forth above, plaintiff has suffered and will, in the future, suffer substantial economic hardship.

64. As a further direct and proximate result of the negligence of Defendants, plaintiff Valerie Fishgold has suffered disruption and experienced loss **of** services, companionship and consortium of her spouse, plaintiff Martin Fishgold.

65. Plaintiffs have been damaged in an amount which exceeds the minimum jurisdictional requirements of this Court.

66. Defendants' conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of punitive damages

for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**COUNT IV**

**(Breach of Implied Warranty)**

67. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68. Defendants are liable to plaintiffs for their breach of implied warranty. Defendants sold the Kugel Patch which was implanted in plaintiff Martin Fishgold. DAVOL and BARD impliedly warranted to plaintiff, his physicians and health care providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which they were intended.

69. DAVOL and BARD knew or should have known that the Composix Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

70. Plaintiff Martin Fishgold, his physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Composix Kugel Patch was fit for such use.

71. When the Composix Kugel Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a

patient's body where they could cause serious injury of harm or death to the end user.

72. As a direct and proximate result of the actions of defendants, plaintiff sustained severe and permanent injuries and suffered great pain, anxiety and emotional anguish, as well as a decrease in the quality of her life.

73. As a further direct and proximate result of the actions of defendants, plaintiff has been required and will in the future be required, to pay extensive medical expenses.

74. As a further direct and proximate result of the actions of defendants, plaintiff Martin Fishgold has suffered disfigurement.

75. As a further direct and proximate result of the actions of defendants, plaintiff Martin Fishgold has sustained a loss of income and loss of earning capacity.

76. As a further direct and proximate result of the actions of defendants, plaintiffs have suffered substantial economic hardship.

77. As a further direct and proximate result of the negligence of Defendants, plaintiff Valerie Fishgold has suffered disruption and experienced loss of services, companionship and consortium of her spouse, plaintiff Martin Fishgold.

78. Plaintiffs have been damaged in an amount which exceeds the minimum jurisdictional requirements of this Court.

79. Defendants' conduct in continuing to market, sell and distribute the

Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**COUNT V**

**(Failure to Warn)**

80. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch to Paradise Valley Hospital for hernia repair surgeries.

82. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time plaintiff Martin Fishgold received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

83. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of

the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Composix Kugel Patch, including but not limited to rupture of the Patch and infection which would require subsequent surgical procedures and could result in severe injuries.

84. The dangerous and defective conditions in the Composix Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time plaintiff had her hernia repair surgery, the Composix Kugel Patch was in the same condition as when manufactured, distributed and sold.

85. Plaintiffs did not know at the time of use of the Composix Kugel Patch, nor at any time prior thereto, of the existence of the defects in the Patches.

86. As a direct and proximate result of the failure to warn of defendants, plaintiff Martin Fishgold sustained severe and permanent injuries and suffered great pain, anxiety and emotional anguish, as well as a decrease in the quality of his life.

87. As a further direct and proximate result of the failure to warn of defendants, plaintiffs have been required and will in the future be required, to pay extensive medical expenses.

88. As a further direct and proximate result of the failure to warn of defendants, plaintiff Martin Fishgold has suffered disfigurement.

89. As a further direct and proximate result of the failure to warn of defendants, plaintiff Martin Fishgold has sustained a loss of income and loss of

earning capacity.

90. As a further direct and proximate result of the negligence of Defendants, plaintiff Valerie Fishgold has suffered disruption and experienced loss of services, companionship and consortium of her spouse, plaintiff Martin Fishgold.

91. As a further direct and proximate result of the failure to warn of defendants, plaintiffs have suffered substantial economic hardship.

92. Plaintiffs have been damaged in an amount which exceeds the minimum jurisdictional requirements of this Court.

93. Defendants' conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of punitive damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

## COUNT VI

**(Fraud / Fraudulent Concealment)**

94. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 93 of this Complaint as if fully set forth herein.

95. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

96. At the time of the design, manufacture and sale of the Composix Kugel

Patch, and more specifically at the time plaintiff Martin Fishgold received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

97. BARD and DAVOL were aware of the dangerous and defective condition of the products and intentionally withheld this information from plaintiff, plaintiff's physicians, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

98. Defendants fraudulently presented to plaintiff, plaintiff's physicians, and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel could and would cause injuries such as those suffered by plaintiff. Further, defendants fraudulently concealed, from the plaintiff and the public, the existence of potential claims and lawsuits, including the claims stated in this complaint.

99. Plaintiff Martin Fishgold and plaintiff's physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

100. As a direct and proximate result of the fraudulent representations of defendants, plaintiff Martin Fishgold sustained severe and permanent injuries and

suffered great pain, anxiety and emotional anguish, as well as a decrease in the quality of his life.

101. As a further direct and proximate result of the fraudulent representations of defendants, plaintiffs have been required and will in the future be required, to pay extensive medical expenses.

102. As a further direct and proximate result of the fraudulent representations of defendants, plaintiff Martin Fishgold has suffered disfigurement.

103 As a further direct and proximate result of the fraudulent representations of defendants, plaintiff Martin Fishgold has sustained a loss of income and loss of earning capacity.

104. As a further direct and proximate result of the negligence of Defendants, plaintiff Valerie Fishgold has suffered disruption and experienced loss of services, companionship and consortium of her spouse, plaintiff Martin Fishgold.

105. As a further direct and proximate result of the fraudulent representations of defendants, plaintiff has suffered substantial economic hardship.

106. Plaintiffs have been damaged in an amount which exceeds the minimum jurisdictional requirements of this Court.

107. Defendants' conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of punitive damages

for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as follows:

A. For special damages in an amount to be proven at trial;

B. For punitive damages in an amount appropriate to punish defendants, and to deter such conduct in the future;

C. For fair and reasonable general damages, pain and suffering, in an amount to be proven at trial;

D. For plaintiffs' damages as a result of defendants' intentional infliction of emotional distress in an amount to be proven at trial;

E. For plaintiffs' costs incurred herein; and

F. For such other and further relief as the Court deems fair and reasonable.

DATED this 6th day of June, 2008.

PLATTNER VERDERAME, PC

By s/Frank Verderame
Frank Verderame
P. O. Box 36570
Phoenix, AZ 85067-6570
Attorneys for Plaintiffs

S:\docs\Fishgold\Pleadings\US Dist Crt.Complaint.doc